IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 25-CR-4001-LTS-KEM |
| Plaintiff, | |
| Vs. | BRIEF IN SUPPORT OF MOTION TO DISMISS |
| KEITH HAVENER, | |
| Defendant. | |

The defendant, by and through his attorney, Patrick T. Parry, hereby submits the

following brief in support of Defendant's Motion to Dismiss:

TABLE OF CONTENTS

I.     FACTS................................................................................................2

II.    REMEDY REQUESTED…………………………………………………..5

III.   ARGUMENT…………………………………………………………………….6

    A. The child pornography provisions of 18 U.S.C. §§ 2252A and 2256(8) are unconstitutional as applied to Havener, whose indictment is based on cut-and-pasted images made without the participation of any real children and therefore protected under the First Amendment……………………………….6

    B. The government cannot prove the elements of sexual exploitation of a child as set out in Counts 1 and 2 where the morphed images are based on publicly available images of minor victims…………………………………….…….....9

IV.   CONCLUSION...............................................................................................11

1

I.    FACTS

Havener was charged on January 16, 2025, in a three (3) Count Indictment alleging illegal acts related to visual depictions of adult female bodies digitally inserted into images of identifiable minor females that are: nude; partially nude or engaged in sexual acts.   The government claims that these images are "child pornography" under 18 U.S.C.§ 2256.   All three Counts allege the creation, use or attempted use of these visual depictions as a basis of the charge brought against Havener.   Counts 1 and 2 charge sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(a) and 2251(e).   Count 3 charges possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2).

Specifically, in Counts 1 and 2 (Sexual Exploitation), the government alleges defendant, between June 1, 2024, and January 13, 2025, used and/or attempted to use MV1 and MV2, two minors under the age of 18 to engage in sexually explicit conduct for the purposes of producing visual depictions of such conduct.   Count 3 (possession of Child Pornorgraphy), using the same dates, asserts the defendant knowingly possessed and attempted to possess visual depictions of child pornography, including a depiction involving a prepubescent minor or a minor who had not attained 12 years of age.

On December 30, 2024, law enforcement received a Cybertip report from Tagged.com for MV1, a 14-year-old making a dating profile offering up house cleaning and prostitution.   On January 3, 2025, law enforcement contacted MV1, MV1 stated they did not create the dating ad. MV1's parents told law enforcement that the ad was likely created by MV1's step-grandfather, the defendant.   MV1's parents stated they had been harassed by the defendant online and the defendant had claimed he had received unsolicited pornographic pictures of MV1 and MV2 from

unknown people but claimed he could not show the photos. There is no evidence that either MV1 or MV2 were aware images had been previously created as the morphed images appear to be based on publicly available social media such as Facebook, Instagram, etc.

Separately on December 3, 2024, the Sioux City Police Department was investigating the defendant for AI generated pornography of adult coworkers' faces superimposed on adult actors found on defendant's work computer at Dennis Supply. In Gmail accounts on the same computer, the SCPD found email conversations with other people stating they can come have sex with MV1. The government asserts Defendant created an email address similar to MV1's name and conversed with these other individuals as if he was MV1. A search warrant return from Google revealed photographs of MV1 and MV2 pulled from Facebook where AI technology has been used to paste adult bodies digitally into original images of identifiable minors with the morphed images including the minors' faces shown with adult bodies that were: nude; partially nude; or in lingerie. Some morphed photographs show MV1 and MV2's faces imposed on adults engaged in explicit sexual conduct. The IP addresses to access all of the accounts on the work computer traced back to an email address registered to the defendant. The undersigned attorney has been unable to ascertain from the government how many images and which specific images were allegedly distributed to third parties.

On January 6, 2025, a search warrant was executed at defendant's residence. A total of seven electronic devices were recovered and seized as possible evidence including: an iPhone, multiple computers/laptops, and multiple external storage devices. Forensic analysis of the devices revealed a total of approximately 1025 AI generated images where adult bodies that were partially nude/nude and/or engaged in sexual conduct were superimposed into images with

3

identifiable minors' faces.   Some of the images appear to be duplicates that were saved onto multiple devices/drives.   All of the minors' images and faces appear to have been copied from publicly available social media such as Facebook, Instagram, etc.

On May 5, 2024, Karen Vincent received a random text message from a number she did not recognize (515-XXX-2481). When Vincent Googled the number, it came back to a "Robert Cross."   Vincent had worked with both the defendant and Robert Cross previously.   On October 14, 2024, Vincent received texts and several modified photos from her Facebook account.   The photos were AI generated photos of Vincent and her granddaughter, MV3 (15 years old) in which they appear to be nude or partially nude.   The messages were sent from the same 515 number.   Vincent contacted the defendant to see who was sending the messages. Defendant stated the person texting Vincent was his ex-girlfriend, Marsha.   Vincent stated that she received several voicemails from the same 515 number where the voice was disguised but sounded like the defendant's.   Vincent confronted defendant about him making the calls and defendant denied it.   The images of Vincent and MV3 were based on their images that were publicly available on social media such as Facebook, Instagram, etc.

The government was not able to complete their review of all seized electronic devices and computers until January 2026.   On January 12, 2026, the government was finally able to provide the undersigned attorney with an opportunity to view the seized contraband materials. The contraband discovery file includes 1025 images, only a small fraction of which contain sexual acts or lascivious images focused on genitals.   The images appear to be created through artificial intelligence to digitally insert the bodies of adult women on top of images of preteen and teenage girls pulled from social media, i.e. Facebook, Instagram, etc.   Most of the created

images show women (with minors' faces) that are either dressed in lingerie, partially nude (topless) or fully nude engaging in the same activities in the original photos such as playing sports or posing with friends and relatives. The government to date has not been able to identify either: (1) which specific images were distributed to third parties; or (2) how many images were sent to third parties. The government has at various times asserted there may be a total number of approximately sixty-five total images it considers to qualify as "child porn" out of the 1025 seized images.

## II.   REMEDY REQUESTED

Federal Rule of Criminal Procedure 12 provides Rule 12(b)(1) provides that a party may raise by pretrial motion any defense that "the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).   Under Rule 12(d), the court must resolve every pretrial motion before trial "unless it finds good cause to defer a ruling" and deferral will not "adversely affect a party's right to appeal."   Fed. R. Crim. P. 12(d).

The defendant requests this court to dismiss the indictment on the grounds that first, the images found on his electronic devices are not child pornography and therefore protected speech under the First Amendment.   Second, the defendant asserts that under the facts here, the government cannot prove the elements of sexual exploitation of a child as set out in Counts 1 and 2 where the AI generated images are based on publicly available images of minor victims, and those counts should be dismissed.

III.    ARGUMENT

A. The child pornography provisions of 18 U.S.C. §§ 2252A and 2256(8) are unconstitutional as applied to Havener, whose indictment is based on cut-and-pasted images made without the participation of any real children and therefore protected under the First Amendment.

The First Amendment to the United State Constitution provides that "Congress shall make no law...abridging the freedom of speech...[.]" Congress has obviously passed laws which abridge certain parts of the right of freedom of speech.   The question raised is whether that speech is "protected" under the First Amendment.   Two Supreme Court cases set forth an analysis on the issue presented.   In New York v. Ferber, 458 U.S. 747 (1982), the Court held that child pornography is not protected speech under the First Amendment.   Ferber did, however, recognize that "...the distribution of descriptions or other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection."   Id. at 764.

In Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), the Court found two provisions of the Child Pornography Prevention Act (CPPA) of 1996 (i.e., 18 U.S.C. § 2256(8)(B) and (D)) to be unconstitutionally overbroad and violative of the First Amendment.   The Court held that virtual child pornography, unlike real child pornography, was not intrinsically related to the sexual abuse of children because the causal link between the virtual images and actual instances of child abuse was indirect.   Id. at 244-258.   According to the Court, the law was constitutionally overbroad because "the child-protection rationale for

speech restriction does not apply to materials produced without children." United States v. Williams, 553 U.S. 285, 288 (2008) (*explaining* Ashcroft v. Free Speech Coalition). Subsequent to Ashcroft, Congress modified the definitions of child pornography to include any images of sexually explicit conduct where--

> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
> (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
> (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

18 U.S.C. § 2256(8)(A) - (C).

Since the additional morphed image language has been added to the definition of child pornography, the Supreme Court has not resolved whether morphed child pornography is protected speech. The Eighth Circuit has concluded that morphed child pornography itself is protected speech, but the distribution of morphed child pornography can be prohibited in United States v. Anderson, 759 F.3d 891 (8th Cir. 2014). In Anderson, The Eighth Circuit stated the child-pornography exception to First Amendment free speech rights is related to the criminal activity of "sexual abuse of minors inherent in the production of child pornography." Anderson, at 894. Since no minor was "sexually abused in the production of Anderson's [morphed child pornography] image," the image itself was protected under the First Amendment. Id. at 895. However, the Court found the morphed images create a real harm to actual minors pictured by creating a record of the false portrayal of engaging in sexual activity and so dissemination of said morphed images not protected based on a compelling government interest under 18 U.S.C. §§ 2252A(a)(2)(A) and 2256(8)(C). Id. At 896.

However, not all morphed images of nude/partially nude minors allegedly created and

possessed by this defendant may constitute pornography. "More than mere nudity is required before an image can qualify as 'lascivious' within the meaning of the child pornography statute." United States v. Petroske, 928 F.3d 767, 772 (8th Cir. 2019) (*citing* United States v. Kemmerling, 285 F.3d 644, 645–46 (8th Cir. 2002). An image of a nude or partially clothed child that focuses on the child's genitals or pubic area and is intended to elicit a sexual response in the viewer would qualify as lascivious. Id. "In determining whether the [child pornography] statute was violated, [the court] analyzes not 'whether the pictures in issue appealed, or were intended to appeal' to the videographer's sexual interests but whether 'on their face, they appear to be of a sexual character.'" Id. The Eighth Circuit has determined whether images are lascivious can be analyzed under the factors set forth in United States v. Dost, 636 F.Supp. 828, 832 (S.D.Cal.1986). United States v. Lohse, 797 F.3d 515, 520 (8th Cir. 2015). "The Dost factors include: (1) whether the focal point of the image is on the minor's genital or pubic area; (2) whether the setting of the image is sexually suggestive; (3) whether the minor is depicted in unnatural poses or inappropriate attire considering the minor's age; (4) whether the minor is fully or partially clothed or is nude; (5) whether the image suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the image is intended to elicit a sexual response in the viewer." Id. Here most of the images seized by the government from the defendant are morphed images of partially nude/nude images of individuals that were originally photographed in normal situations posted on social media, i.e. playing volleyball or posing next to friends/relatives at various events. Only a small fraction of the seized images actually display: sexual activity; a focus on genitalia; or any suggestion of willingness to engage in sexual activity. Since the undersigned attorney has been unable to determine which specific images

8

were distributed to third parties, it is reasonable to assume that the distributed images may have consisted only of morphed images that display only mere nudity, and do not qualify as 'lascivious' images.  If the defendant did not distribute any 'lascivious' images to third parties, then the government will be unable to meet its burden under the law as set out in Anderson.

    B.  The government cannot prove the elements of sexual exploitation of a child as set out in Counts 1 and 2 where the morphed images are based on publicly available images of minor victims.

Rule 12(b)(2) of the Federal Rules of Criminal Procedure provides for consideration, prior to trial, of "any defense, objection, or request that the court can determine without a trial of the general issue."  Fed. R. 12(b)(2).  "In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constitute the violation of law for which he is charged.  If the acts alleged in the indictment do not constitute a violation of law, the indictment is properly dismissed."  United States v. Polychron, 841 F.2d 833, 834 (8th Cir. 1988).  An indictment is sufficient if it, "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling v. United States, 418 U.S. 87, 117 (1974).  United States v. Hall, 20 F.3d 1084, 1087 (10th Cir.1994).  "[I]t is permissible, and even desirable in certain circumstances, for a court to consider evidence in connection with a pretrial motion to dismiss, particularly where the operative facts are undisputed and not objected to, in order to ascertain whether the elements of the criminal charge can be established."  United States v. Lafferty, 608 F. Supp. 2d 1131, 1137 (D.S.D. 2009).

Under Counts 1 and 2, (Sexual Exploitation), the government must prove in relevant part

that the defendant was a "person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct. . . "  18 U.S.C. § 2251(a).   This offense carries a mandatory 15 year minimum sentence, as it involves having minors engaging in sexually explicit conduct to create child pornography instead of mere possession or distribution of child pornography.   18 U.S.C. § 2251(e).   There is no government evidence in this case that can establish that the defendant actually employed, used, persuaded, induced, enticed, or coerced a minor to engage in a sex act to be produced as a visual depiction.   The Eighth Circuit has defined that 'used' can include photographing an unaware (sleeping) minor if said photos were taken during simultaneous exhibition of the genitals of an adult.   United States v. Lohse, 797 F.3d 515, 519 (8th Cir. 2015).   None of the actual minor victims here (MV1, MV2, MV3) were aware their likenesses were used at the time the morphed images were created, and no genitals were exposed at that same time the minors were originally photographed.   It appears that all of the images used of actual minors were scraped data taken from publicly available social media, including school photos, sporting events, and other group events.   There is no evidence the defendant had any communications with actual minors to an attempt to have them engage in sexually explicit conduct, and therefore no "use" within the meaning of the statute.   Therefore, the defendant can not be found guilty of sexual exploitation under the elements of 18 U.S.C. § 2251.

IV.     CONCLUSION

The defendant respectfully requests oral argument on this matter and dismissal of all three (3) Counts of the Indictment brought against him.

Respectfully Submitted,

/s/ Patrick T. Parry
Patrick T. Parry PC
Mayne, Hindman, Frey, Parry and Wingert
701 Pierce St., Ste. 300
Sioux City, IA 51101
(712)277-1434 FAX (712)255-8049
pparry@maynelaw.com
ATTORNEY FOR DEFENDANT